United States District Court
Southern District of Texas
**ENTERED**
February 29, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BELFER COSMETICS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-683 |
| | § | |
| NORDSTROM, INC., and | § | |
| ERNO LASZLO, INC. | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION ON DEFENDANTS MOTION FOR
SEVERANCE, TRANSFER, AND STAY**

This patent infringement case involves a line of skin-care products designed to retard or reduce wrinkles. Belfer Cosmetics, LLC holds two patents, owned by William Belfer, on anti-aging skin products. Belfer alleges that Erno Laszlo, Inc. infringes the patents by selling an anti-aging line of products it designed, manufactured, and distributed. EL sells the product line through retailers, including Nordstrom, Inc. This case is one of several that Belfer has filed against cosmetic companies throughout the country; the other cases have apparently settled.

EL is a New York corporation with its principal place of business in New York. Nordstrom is a Washington corporation with its principal place of business in that state. Belfer is a corporation organized under Texas law. William Belfer, the owner of Belfer and of the two patents, resides in New Jersey. It is unclear whether Belfer has a physical place of business, has employees other than William Belfer, or has operations other than infringement litigation. The record contains evidence, which Belfer does not controvert, that some years ago, it sold some products covered by its patents to a company based in Florida. That company, since dissolved, was managed in part by William

Belfer.

After some discovery, EL and Nordstrom moved to sever and transfer Belfer's claims against EL to the Southern District of New York, where EL's offices are located, and to stay the claims against Nordstrom pending the resolution of the transferred claims. (Docket Entry No. 46). Belfer responded, EL and Nordstrom replied, and Belfer surreplied. (Docket Entries No. 50, 51, 53).

Based on the pleadings, the motion, responses, replies, surreplies, the record, and the relevant law, the court grants the motion. The claims against EL are severed and transferred to the Southern District of New York. The remaining claims against Nordstrom are stayed pending the resolution of the claims against EL.

The reasons are explained below.

## I.   Background

EL's Transphus line of anti-aging skin care cosmetic products contain an underlying formulation that produce what is described as "Botox-like effects." The record evidence is that in 2003, EL contracted with a formulator to develop this formulation, and in 2004 contracted with manufacturers to test the formulation for safety and efficacy and to manufacture the products. EL started commercially selling the products in September 2005, and added two more products made using the same formula in November 2006. Nordstrom began selling EL's products in different retail stores beginning in 2011.

Belfer holds U.S. Patent Nos. 7,566,464 and 8,025,907, entitled "Cosmetic Composition to Accelerated Repair of Functional Wrinkles." Belfer alleges that EL's Transphuse products infringe these patents. As noted, Belfer does not currently, make, sell, or offer to sell any cosmetic products covered by the patents, nor has it done so recently. Belfer filed for the '464 patent in August 2006,

based on a provisional application filed in September 2005; the '464 patent issued in July 2009. Belfer filed for the '907 patent, based on the same provisional application, in July 2009; the patent issued in September 2011.

EL asserts that Belfer's claims are barred by 35 U.S.C. § 273(a) because EL sold Transphuse in good faith at least one year before the patents were filed or disclosed to the public. EL also asserts noninfringement and anticipation by prior art.

The motion does not engage the merits of those arguments. Instead, EL argues that the claims against it should be severed and transferred to New York, where its business is centered and where the key witnesses and information relating to the development and manufacture of the alleged infringing products are located. EL argues that the claims against Nordstrom depend on, and are peripheral to, the success of the claims against the product owner and should be stayed until those claims are resolved. Belfer has responded with arguments about reasons that the case should remain in Texas or at least not be divided and transferred in large part to New York. The arguments on both sides are considered below.

## II.    Severance and Transfer in a Patent Case

District courts have "broad discretion to sever issues to be tried" under Rule 21. *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *see also Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). In deciding whether to sever claims in a patent case, courts consider: "(1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims." *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *1 (E.D. Tex. Mar. 18, 2010); *Koh v. Microtek Int'l*,

3

*Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 584 (D.N.J. 2001); *see also In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) (applying these factors).

The first two factors weigh in favor of severing the claims against EL from those against Nordstrom. It is undisputed that Nordstrom sold the Transphuse products in stores across the country but played no role in product development or manufacture. The primary defendant is EL, the developer and owner of the allegedly infringing Transphuse products line. Nordstrom could be liable for selling Transphuse products in its stores only if the products are infringing. Whether Nordstrom is liable depends on whether EL is liable for infringement. The claims against Nordstrom cannot be decided until the liability claims against EL are resolved.

The Federal Circuit recognizes that claims against a retailer of allegedly infringing goods are peripheral to the claims against the product owner and developer. *See In re Nintendo of Am., Inc.*, 756 F.3d at 1365 ("When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally take precedence."). Although Belfer argues that Nordstrom may be liable for selling infringing goods and Belfer may elect to pursue the highest royalty rate among the defendants, the Federal Circuit in *Nintendo* rejected this argument as a basis for declining to sever the claims against the retailer. 756 F.3d at 1366 (rejecting the argument that the manufacturer is not the "true defendant" because the retailer may be liable and the patent holder may elect the highest royalty rate among the defendants).

In *Nintendo*, a patent holder sued a game manufacturer for patent infringement. *Id.* at 1365. The patent holder also sued 11 retailers for selling the manufacturer's allegedly infringing products.

*Id.* The Federal Circuit reversed the district court's denial of a motion to sever the claims against the manufacturer from those against the retailer. The court reasoned that when a patent holder sues both the manufacturer of an allegedly infringing product and the retailers, "it is the manufacturer who is generally the 'true defendant' in the dispute." *Id.* (quotations omitted). The patent holder "has no claim against the Retailers unless the infringement claims against [the manufacturer] are resolved in favor of [the patent holder]." *Id.* Severance avoids unnecessarily "imposing the burdens of trial on the [retailer]."

Similarly, in *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003) and *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010), the court found that the claims against defendants who were only retailers of the allegedly infringing products were "peripheral" to the claims against the product manufacturer and distributor, and granted the motion to sever.

Belfer argues that in *Koh* and *Shifferaw*, the patent holder did not argue, as Belfer does here, that the retailer had the only evidence relevant to the sales profits necessary to award Belfer damages. No damages can be awarded against Nordstrom for selling infringing products unless, and until, EL is found liable because those products infringe Belfer's valid patents. The courts in *Koh* and *Shifferaw* did not grant the motions to sever the claims against the retailers because they did not have relevant damages evidence. Instead, the courts reasoned that the claims against the retailers were peripheral to the liability issues against the owner and developer of the allegedly infringing products. *See Shifferaw*, 2010 WL 1064380, at *3 ("Where a single manufacturer is the only entity in the U.S. who makes and sells the only accused product to retailers, a patent infringement claim against a retailer is peripheral to the claims against the manufacturer."); *Koh*, 250 F. Supp. 2d at 632 (citing

to multiple cases finding claims against retailers peripheral to the claims against the product owners and developers).

Belfer attempts to distinguish *Koh* because the retailer in that case sold only a small amount of the infringing product, while Nordstrom is responsible for all of the sales of the allegedly infringing product. This distinction is not a persuasive basis for declining to sever. Treating the product owner, designer, developer, or manufacturer as the primary defendant is based in part on that party's "presumed greater interest in defending its actions against charges of patent infringement." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). Even if Nordstrom is the only retailer of the Transphuse products line, the retailer's overall interest in that product is still small relative to EL's interest; EL owns and developed the product line, while Nordstrom sells it as one among many other products.

The third factor in determining whether to sever, the propriety of transferring the severed claims, also weighs in favor of severance. Section 1404(a) permits a district court to transfer a civil action to any other district where the case might have been brought, if transfer serves "the convenience of parties and witnesses . . . [and is] in the interest of justice." 28 U.S.C. § 1404(a); *see also Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964); *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004). A district court has "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1999). The party seeking transfer must show that "the transferee venue is . . . clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The plaintiff's choice of forum is normally given deference, especially when the forum is the plaintiff's "home." *See Dearing v. Sigma Chem. Co.*, 1 F. Supp. 2d 660, 665 (S.D. Tex. 1998);

*Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997). This choice is rarely disturbed unless the other factors weigh strongly in favor of transferring the case. *See Henderson v. AT & T Corp.*, 918 F. Supp. 1059, 1067 (S.D. Tex. 1996). But "[w]here the plaintiff brings suit outside its home district, or where most of the operative facts occurred outside the district, plaintiff's choice of forum has reduced significance and is given less weight." *Toshiba Corp. v. Hynix Semiconductor, Inc.*, No. CIV.A.3:04-CV-2391-L, 2005 WL 2415960, at *3 (N.D. Tex. Sept. 30, 2005). The Southern District of Texas is not Belfer's home. Although Belfer is incorporated under Texas law, the only apparent connection between Texas and this case is that some of the infringing product was sold in Texas and Belfer's counsel is located here. Belfer's choice of forum is entitled to little weight.

To analyze transfer under § 1404(a), a court examines public and private interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* These factors are "not necessarily exhaustive or exclusive" and "none can be said to be of dispositive weight." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

The first private interest factor, the relative ease of access to sources of information, weighs in favor of transfer to New York, where EL's documents relevant to its decisions to enter into

contracts to develop a formula for a line of anti-aging skin creams, to test it, and to manufacture it, are located, along with the witnesses knowledgeable about those documents.  There are no similar documents in Texas.  The fact that many of these documents may be in electronic form does not make this factor superfluous.  *Id.* at 316.

The second and third factors, whether compulsory process can be used to secure witness testimony, and the cost of attendance for willing witnesses, also weigh in favor of transfer.  The most significant witnesses appear to be in the Southern District of New York.  EL has designated two witnesses; a current EL employee, who is knowledgeable about the development of Transphuse; and an employee of the third-party company that contracted with EL to test and manufacture the Transphuse products line.  Both of these witnesses are located in New York.

Although Belfer correctly argues that the most weight is given to whether nonparty witnesses are in or will be less inconvenienced by transfer to the proposed transferee district, the record does not show that this makes Texas a more convenient forum in this case.  In its response to the motion to sever and transfer, Belfer designated for the first time two witnesses, both nonparties, and both located in Texas.  These witnesses were defendants in an earlier patent infringement action that Belfer filed.  They settled the claims Belfer brought against them, entered into a licensing agreement, and began labeling their products with Belfer's patent numbers.  Belfer argues that these witnesses are needed to rebut EL's marking defense.  But Belfer has not explained what makes the testimony of these witnesses relevant, much less critical, to the claims Belfer brings in this case.  The allegedly fringing behavior and products in that case are wholly unrelated to the products at issue or to the defendants sued here.  *See LeBouef v. Gulf Operators, Inc.*, 20 F. Supp. 2d 1057, 1060 (S.D. Tex. 1998) ("[A] court must focus primarily upon the availability and convenience of *key* witnesses.  The

8

convenience of one key witness may outweigh the convenience of numerous less important witnesses.") (emphasis in original).  The presence of these witnesses in the Southern District of Texas is entitled to scant weight, particularly compared to the presence of the key nonparty witness EL identified in the Southern District of New York.

Belfer argues that the fact that EL contracted with a product developer and with product manufacturers located outside New York weighs against transfer to the Southern District of New York.  But one of those companies, a manufacturer, is in New York.  None is in Texas.  And EL commissioned and contracted for the formulation and manufacture of the Transphuse product line from New York.  The communications between EL and the third-party product developer and manufacturers were from New York, where all the relevant EL employees worked.  This argument does not weigh against transfer.

The fourth factor, practical problems in trying the case, also weighs in favor of transfer.  The primary defendant, EL, has its main office in New York.  William Belfer resides near New York. The case has little connection to Texas.  Trying the case closer to where the parties are located is generally easier, more expeditious, and less expensive.  *See In re Nintendo of Am., Inc.,* 756 F.3d at 1366 (trying a patent case near the manufacturer, as opposed to the retailer, would be more efficient).

The public interest factors also weigh in favor of transfer.  The parties agree that the factors of familiarity of the forum with the law and the avoidance of conflict of law problems are neutral. Belfer argues that the factor of court congestion weighs in favor of Texas, because the median time for resolving cases in the Southern District of New York is approximately seven months longer than in the Southern District of Texas.  Belfer does not, however, break out patent cases, which the

Southern District of New York judges are well-equipped to handle, given the large number of complex cases in that district.

The local interest factor also weighs in favor of transfer to the Southern District of New York. This case has little connection to Texas, other than the fact that some product was sold here—as well as in many other locations around the country—and that Belfer was incorporated under Texas law and Belfer's counsel is here. The main defendant is in New York. The key witnesses are in New York. The facts relevant to infringement occurred in New York. Belfer is located close to New York. The relevant factors weigh in favor of severing the claims against EL from those against Nordstrom and transferring the severed claims to the Southern District of New York. The motion to sever and transfer is granted.

## III.    The Motion to Stay the Remaining Claims Against Nordstrom

The district court has the power to stay proceedings as part of its inherent power to control its own docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Nelson v. Grooms*, 307 F.2d 76, 78 (5th Cir. 1962). In deciding whether to stay a patent infringement case, courts typically consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at \*2 (W.D. Tex. June 16, 2015); *Emtel, Inc. v. Lipidlabs, Inc.*, No. CIV.A. H-07-1798, 2013 WL 1707678, at \*5 (S.D. Tex. Apr. 19, 2013); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999). There is no evidence that Belfer

will be prejudiced or incur a tactical disadvantage by having to litigate liability against EL before proceeding to litigate damages against Nordstrom. Although Belfer may elect its damages theory and Nordstrom could be a source for satisfying a judgment in Belfer's favor, determining the main issue—infringement—before determining damages adversely affects those interests.

The second factor also weighs in favor of a stay. If EL is found liable in New York, the issue remaining against Nordstrom would be damages. It is routine to try damages separately from liability and doing so here may allow the parties and the court to save resources should EL be found not liable.

The third factor weighs in favor of a stay. Discovery is not yet complete, nor has a trial date been set. A stay of proceedings against Nordstrom is warranted because all three factors weigh in favor of a stay.

## IV.    Conclusion

The motion to sever, transfer, and stay, (Docket Entry No. 46), is granted. The court severs Belfer's claims against EL from those against Nordstrom and transfers the claims against EL to the Southern District of New York. The order also stays the case as to Nordstrom until Belfer's claims against EL are resolved.

SIGNED on February 26, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

11